ESTATE OF Walter LARKINS, deceased, by his Administratrix, Mabel LARKINS, Appellant,

v.

FARRELL LINES, INCORPORATED, Appellee.

No. 83–2162.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 8, 1986.

Decided Dec. 5, 1986.

Robert A. Jenkins (Leonard C. Jaques, Jaques Admiralty Law Firm, P.C., on brief), for appellant.

Randall C. Coleman (Ober, Kaler, Grimes & Shriver, on brief), for appellee.

Before PHILLIPS and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.

WILKINSON, Circuit Judge:

Walter Larkins, a merchant sailor employed by Farrell Lines, was lost at sea. His estate brought suit against Farrell Lines alleging that Farrell was negligent under the Jones Act, and that Farrell's vessel, the *Austral Pioneer*, was unseaworthy under general maritime law. At trial, the jury returned a verdict for defendant. Larkins' estate now makes various assignments of error pertaining primarily to the district court's jury instructions. We do not find these persuasive, and we therefore affirm.

## I.

Walter Larkins' duties on the *Austral Pioneer* consisted of cleaning and maintaining the officers' quarters. Sometime during the night of June 13, 1982, Larkins disappeared from the vessel which was then en route to New Zealand. He was last seen at about 8 p.m. in his room and was reported missing the next morning at

8:30 a.m. when he failed to appear for his duties. During the night the seas were rough, and the ship's captain ordered the crew to clear the deck as a safety measure. After a search of the ship and the surrounding waters, Larkins was presumed lost at sea.

Larkins, fifty-five at the time of his death, took medication to control his epilepsy and high blood pressure. On June 11, two days before his disappearance, he was found unconscious in the chief steward's office. When he revived, Larkins said that he sometimes fainted when he failed to take his blood pressure medicine.

Larkins' widow brought suit under the Jones Act and under general maritime law. She argued at trial that the ship's officers were aware of Larkins' epileptic condition, but negligently failed to provide "special precautions" to protect him. She also asserted that the officers' failure to safeguard her husband rendered the vessel unseaworthy. The jury held for the defendant, returning special verdicts that Farrell was not negligent and that the *Austral Pioneer* was not unseaworthy. We now consider appellant's various assignments of error in turn.

## II.

■ Appellant's chief complaint is that the trial judge failed to instruct the jury that, under the doctrine of *res ipsa loquitur,* it could infer appellee's negligence and the vessel's unseaworthiness from the fact of Larkins' disappearance. We do not believe, however, that the disappearance presents circumstances that warrant a charge of inferred negligence or unseaworthiness. We hold, therefore, that the district court's refusal to give the requested instruction was proper.

The Supreme Court has developed a law of *res ipsa loquitur* in admiralty that permits the trier of fact to draw inferences of negligence from unexplained circumstances. *Johnson v. United States,* 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468 (1948). Under the Jones Act, the standard of recovery has not been a strict one, and seamen have

been afforded the "judicially developed doctrine of liability granted to railroad workers by the FELA," *Kernan v. American Dredging Co.,* 355 U.S. 426, 439, 78 S.Ct. 394, 401, 2 L.Ed.2d 382 (1958), including its light burden of proof on negligence and causation. While the standard of causation for unseaworthiness is "more demanding," *Chisholm v. Sabine Towing & Transportation Co.,* 679 F.2d 60, 62 (5th Cir.1982), the plaintiff's burden in either case has been characterized as light. *Vallot v. Central Gulf Lines,* 641 F.2d 347, 350 (5th Cir.1981). The jury's role, moreover, has been an important one in such cases, and doubts have been resolved in favor of submission. G. Gilmore and C. Black, *The Law of Admiralty* 377 (2d ed. 1975).

In admiralty, *res ipsa loquitur* may be most relevant in determining which cases of unexplained circumstances should go to the jury. Where "the balance of probabilities" might reasonably be found in favor of negligence, submission is required. The mere happening of an accident, however, does not give rise to a *res ipsa* inference of negligence or breach of duty under the Jones Act or general maritime law. *Kiesel v. American Trading Production Corp.,* 347 F.Supp. 673, 678–79 (D.Md.1972); *Ursich v. da Rosa,* 328 F.2d 794 (9th Cir.1964). Where varying explanations are equally probable, *res ipsa loquitur* cannot apply. W. Prosser and W. Keeton, *Law of Torts,* 248–49, 257–58 (5th ed. 1984).

While the historic purposes of admiralty law may favor jury resolution of personal injury claims, instructions on *res ipsa loquitur* should be carefully circumscribed where, as here, a seaman's disappearance is mysterious. Charging the jury to infer negligence or unseaworthiness from the fact of the seaman's disappearance, without more, invites a verdict based on sympathy or speculation. *See Swords v. American Sealanes, Inc.,* 443 F.2d 1324, 1325 (4th Cir.1971). A jury instruction on *res ipsa* under these circumstances may make the plaintiff's light burden nonexistent, and deprive the jury of its traditional role of assigning fault in negligence actions and

assigning weight to circumstantial evidence. Such an instruction, in fact, all but directs a finding of liability where questions both of fault and causation may be much in dispute.

For a *res ipsa* instruction to be warranted, the plaintiff must establish that "(1) the event is of a type which ordinarily does not happen in the absence of someone's negligence; (2) the instrumentality causing the injury was, at the time of the accident, within the exclusive control of the defendant; (3) the accident was not due to any voluntary action or contribution on the part of the plaintiff." *Olsen v. States Line*, 378 F.2d 217, 220 (9th Cir.1967); *Savard v. Marine Contracting*, 471 F.2d 536, 542 (2d Cir.1972).

Here, however, far too little is known of the facts surrounding Larkins' disappearance to "let the thing speak for itself." Because the specific instrumentality that caused Larkins' disappearance is unknown, it is impossible to determine whether that instrumentality was in appellee's exclusive control. While appellee was in control of the *Austral Pioneer* itself, there is no evidence that the condition of the vessel's gear or appurtenances contributed to the disappearance. Larkins may have been swept overboard by the rough weather when, in spite of the captain's order to the contrary, he went up on deck. He may have committed suicide. An epileptic seizure may have played some part in this sad event, but exactly what part is unclear. The only evidence of negligence presented by the plaintiff—that of the crew's alleged failure to take special precautions for an epileptic seaman—was a matter for the jury under the usual preponderance standard, not under a *res ipsa* instruction. Because varying explanations of Larkins' disappearance are possible, a *res ipsa* instruction is inappropriate.

In *Swords v. American Sealanes, Inc.*, 443 F.2d 1324 (4th Cir.1971), this court reversed for lack of evidence a jury verdict on unseaworthiness in a seaman's unwitnessed disappearance from his duty post. Judge Butzner dissented, arguing that a sagging chain guardrail warranted an inference of unseaworthiness sufficient to take the issue to the jury. *Id.* at 1326.

In the instant case, the trial judge allowed the issue of negligence and unseaworthiness to go to the jury on substantially less than a sagging guardrail. The court instructed the jury "on the 'slight negligence' test to be applied in determining liability under the Jones Act" and on "the absolute duty of the shipowner in respect to unseaworthiness." *Rabb v. Canal Barge Company*, 428 F.2d 201, 204 (5th Cir.1970). Its treatment of appellant was fair and even generous. Appellant's further request for a *res ipsa* instruction simply asks too much.

### III.

Appellant next contends that the trial court erred in instructing the jury that Larkins had a duty to disclose his epileptic condition during pre-voyage physical examinations and that he could not recover for negligence if he misrepresented his condition. Relying on *Still v. Norfolk & Western Railway*, 368 U.S. 35, 82 S.Ct. 148, 7 L.Ed.2d 103 (1961), appellant argues that concealment or misrepresentation may not serve to defeat a seaman's recovery for negligence under the Jones Act even when the misrepresentation bears a causal relationship to the injury involved. The instruction as given, however, is consistent with *Still*.

The trial judge instructed the jury that: If you find that decedent knowingly misrepresented his physical condition, and, that because of that misrepresentation defendant was justified in not taking special precautions for Larkins' safety, then you may not find the defendant negligent in that regard.

Appellant interprets this instruction to mean that, if Larkins misrepresented his epileptic condition, the jury was precluded from finding appellee negligent in *any* regard. The trial court's instruction, however, addressed only the failure to take special precautions. Under the Jones

Act, a shipowner's duty is to provide seamen with a safe place to work. *Michalic v. Cleveland Tankers*, 364 U.S. 325, 327–28, 81 S.Ct. 6, 9–10, 5 L.Ed.2d 20 (1960). A shipowner is not obligated to provide any special precautions, however, unless he knows of a particular physical condition requiring such precautions. *Compare Carlton v. M/G Transport Services*, 698 F.2d 846 (6th Cir.1983) (directed verdict for defendant upheld where defendant shipowner had no knowledge of seaman's heart disease) *with Mroz v. Dravo Corp.*, 293 F.Supp. 499 (W.D.Pa.1968), *aff'd* 429 F.2d 1156 (3d Cir.1970) (evidence sufficient to support finding of negligence where shipowner's medical examiner knew of cook's emphysema, but permitted her to work in conditions where she was forced to breathe diesel fumes). The trial court's instruction with respect to the shipowner's duty was necessary to convey to the jury a clear and correct understanding of the applicable law.

■ The instruction was also necessary because appellant put in dispute the qualifications of the physicians who conducted the pre-voyage examination and alleged that they were negligent in certifying decedent to be medically fit. Appellee thereupon put on testimony from the examining physicians as to the misrepresentation. Appellant cannot now complain that it was inappropriate for the trial judge to instruct the jury as to the misrepresentation.

### IV.

Appellant further contends that the trial judge erred by requiring, as part of the unseaworthiness instruction, that the jury first determine whether Larkins' bout of unconsciousness two days before his disappearance put appellee on notice of Larkins' need for special precautions. The charge read as follows:

[L]iability for failing to recognize potentially serious medical problems, cannot be imposed where, considering all of the circumstances, Larkins' loss of consciousness would not have put a reasonable and prudent layman, trained in first aid, on notice of the existence of such problems. Therefore, unless you find that Larkins' loss of consciousness was so indicative of a serious medical problem, as to put defendant's personnel on notice that Larkins required protective precautions to ensure his safety, you must find the ship seaworthy.

■ To begin with, appellant failed to object to this instruction with the distinctness and specificity that Fed.R.Civ.P. 51 requires. The objection, if it can be termed that, was garbled, and failed to apprise the trial judge of its basis. Appellant apparently concedes that the trial record does not contain an adequate objection to the unseaworthiness charge, but contends that she made a fuller objection during a five and one half hour charge conference with the trial judge. That bare reference to an off-the-record statement affords no basis for appellate review. *King v. Ford Motor Co.*, 597 F.2d 436, 440 n. 3 (5th Cir.1979). The trial judge, moreover, understood that plaintiff agreed to the instruction in conference. The trial transcript makes clear that either no objection was made or that the trial judge did not understand it. In either case, appellant failed to comply with Rule 51.

We also decline appellant's invitation to hold the given instruction was plain error. Instances of plain error must be rare and reserved for denials of fundamental justice. *Furka v. Great Lakes Dredge & Dock Co.*, 755 F.2d 1085, 1089–90 (4th Cir.1985). The instruction here worked no such harm. It is true, as appellant contends, that seaworthiness is "an absolute duty requiring no knowledge on the part of the shipowner." *Id.* at 1087, n. 3. Thus, in the ordinary case, where the alleged unseaworthy condition concerns faulty gear or appurtenances, the shipowner cannot raise lack of notice as a defense.

■ It is questionable, however, whether the instant claim even pertains to unseaworthiness. In this case, the alleged "unseaworthiness" was not a failure of the vessel or its crew to be "reasonably fit for

their intended use," *Mitchell v. Trawler Racer*, 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960), but the failure of the crew to provide special precautions to protect Larkins from injury due to his epileptic condition. The trial court's instruction with respect to notice was pertinent as to whether the physicians and crew even knew that special precautions were necessary. The notice instruction addressed only special precautions, not the general duty of unseaworthiness. Indeed, the jury received a proper general instruction that no notice was required to bring that duty into being.

## V.

Appellant's remaining assignments of error are easily addressed. She contends that the trial judge erroneously allowed into evidence the fact of Larkins' prior alcoholism and then compounded this prejudicial error in instructions to the jury.

We disagree. The trial judge enjoys broad discretion in balancing the relevance of evidence against its possible unfair prejudice under Fed.R.Evid. 403. The Rule 403 balance is essentially a matter of trial conduct; "if judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal." *United States v. Long*, 574 F.2d 761, 767 (3d Cir.1978). Here the evidence was relevant to the cause, severity, and treatment of Larkins' seizures, to plaintiff's complaints of medical malpractice, and to defendant's failure to take special precautions in his behalf.

The trial judge instructed the jury that Larkins' alcoholism did not play a part in his disappearance. That instruction was curative, not prejudicial. The mild instruction sought, in fact, to place the evidence in some perspective for the jury after the emphasis of the matter in plaintiff's own closing argument.

## VI.

Finally, appellant argues that the trial judge committed reversible error by refusing to strike the expert testimony of Dr. Ernest Niedermeyer. At trial, Dr. Niedermeyer stated at one point that it was "common sense" to conclude through a process of elimination that Larkins committed suicide. According to appellant, the expert's statement was highly prejudicial because of the great weight that juries attach to such testimony and because the statement supplied a ready explanation for Larkins' disappearance. She argues also that the testimony usurped the jurors' duty to use their own common sense to reach a conclusion.

We decline to find an abuse of discretion in the refusal of the trial judge to strike this testimony. Dr. Niedermeyer used his expertise as an epileptologist to rule out the possibility that Larkins fell overboard during either "a grand mal seizure" or a "temporal lobe attack." He then testified to the existence of a correlation between epilepsy and suicide. The trial judge could well have concluded that the testimony was "specialized knowledge" that would assist the jury within the parameters of Fed.R.Evid. 702 *et seq*. We likewise decline to adopt a rule that the use of the words "common sense" in the course of expert testimony automatically renders that testimony inadmissible. A review of the record indicates that Dr. Neidermeyer's judgment drew upon his medical specialty. What seems "common sense" to an expert may represent the intuitive application of accumulated expertise.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.