**KERR–McGEE CORPORATION,**
Appellee,

v.

**William E. LAW, in personam, and as Owner and Claimant of the BARGE MICHAEL, In Rem, Appellant.**

No. 72–2406.

United States Court of Appeals, Fourth Circuit.

Argued April 3, 1973.

Decided June 7, 1973.

Morton H. Clark, Norfolk, Va. (Vandeventer, Black, Meredith & Martin, Norfolk, Va. on brief) for appellant.

Walkley E. Johnson, Jr., Norfolk, Va. (Crenshaw, Ware & Johnson, Norfolk, Va., on brief) for appellee.

Before HAYNSWORTH, Chief Judge, and BUTZNER and FIELD, Circuit Judges.

BUTZNER, Circuit Judge:

This appeal involves the in personam liability of the owner of a vessel that is subject to a demise or bareboat charter and the in rem liability of the vessel for damage to cargo. Loaded with superphosphate, the Barge MICHAEL capsized and sank in high seas and heavy winds in the Chesapeake Bay while en route from Baltimore, Maryland to Williamston, North Carolina. The barge, owned by William E. Law, had been demised to Allied Towing Corporation, an affiliate of Allied Container Service, 15 months before it sank. Law was the president and principal stockholder of Allied Towing. Although the transportation agreement for the cargo was made between Kerr-McGee Chemical Corporation and Allied Container, Allied Towing was performing the carriage with its own tug and the MICHAEL. Kerr-McGee was aware of the arrangement.

The district judge found that the cargo loss was caused by the unseaworthiness of the Barge MICHAEL and the negligence of Allied Towing and William E. Law. He held that Allied Towing was exculpated by the terms of the transportation agreement, and this ruling has not been appealed. He further held that because Law was not a party to the agreement, neither he nor the MICHAEL could benefit from the exculpatory clause. Accordingly, the district court entered judgment against Law in personam and the MICHAEL in rem for the cargo loss. We reverse.

I

Expert testimony established that defective hatch covers allowed high seas to

flood the cargo compartment and capsize the barge. Law admitted that the hatches had not been repaired since he purchased the barge three years earlier. He knew that eighteen days before the accident the barge had run aground and taken water through the hatch covers, and he had been advised that the hatch covers were damaged. On the basis of this evidence, the district court held that Law was negligent.

Law does not contest the factual findings of the district court, but argues that because the barge was under a demise charter to Allied Towing Corporation, Allied became the owner pro hac vice for the term of the charter and Law owed no duty to the owner of the cargo concerning the condition of the barge. Kerr-McGee, agreeing that the barge was under a demise charter, disagrees about the effect of the charter on the liability of the owner. It argues that the question is not one of the warranty of seaworthiness, but rather the negligence of Law, which it says is separate and distinct from the transportation agreement or the charter.

■■ We think the authorities sustain Law's position. There is no suggestion that the barge was unseaworthy or that Law had failed to exercise due care regarding its condition when he chartered it to Allied Towing. While there appear to be few cases dealing with the question, those in which the issue has been raised hold that the owner of a vessel under a demise charter is liable only for unseaworthiness or negligence that pre-exists the charter. Ramos v. Beauregard, Inc., 423 F.2d 916 (1st Cir. 1970); Vitozi v. Balboa Shipping Co., 163 F.2d 286 (1st Cir. 1947); In re New York Dock Co., 61 F.2d 777 (2d Cir. 1932). See In re Marine Sulphur Queen, 460 F.2d 89, 100 (2d Cir. 1972) (dictum). This rule recognizes that when the owner of the vessel enters into a demise charter, he surrenders all possession and control of the vessel to the charterer. Since he no longer has the right to control the use of the vessel, he is no longer charged with the duties and liabilities that arise out of its ownership. Conversely, the demise charterer "becomes subject to the duties and responsibilities of ownership." Leary v. United States, 81 U.S. (14 Wall.) 607, 610, 20 L.Ed. 756 (1872). Allocation of insurance is consistent with this rule. The owner typically carries hull insurance for his own account and the charterer arranges for indemnity coverage. Gilmore & Black, The Law of Admiralty § 4–22 (1957).

The bare fact that Law was president and principal stockholder of Allied Towing does not, standing alone, alter our decision. The record does not disclose participation by Law in the operation and maintenance of the barge. It is reasonable to assume, however, that any duties of this nature that he performed related to his position in Allied Towing and not to his ownership of the barge. Therefore, since Law, as owner of a vessel under a demise charter, owed Kerr-McGee, the owner of the cargo, no duty to maintain the vessel after it was chartered, the judgment of the district court holding him liable for negligence must be reversed.

## II

The issue of the MICHAEL's in rem liability stands on a different footing. The district court found that the defective hatch covers rendered the barge unseaworthy and that this condition was the cause of the accident. He accordingly held the barge liable for the loss.

■ The existence of a demise charter does not prevent the attachment of tort liens or preclude the in rem liability of a vessel. Gilmore & Black, supra, § 4–24. Where, as here, the vessel is found to be unseaworthy, it is liable for the loss of cargo caused by that condition. However, Law urges that clause 13 of the transportation agreement between Allied Container and Kerr-McGee exculpates the barge from liability.

Clause 13 provided as follows:

"All claims for loss, damage and/or expense of whatsoever nature or from

whatsoever cause, including all right of subrogation against Allied and its affiliated companies, and its vessels employed herein, are hereby waived, except for General Average, Sue and Labor, and collision liability."

Law asserts that the clause insulates the MICHAEL from liability because the barge was demised to Allied Towing, one of Allied Container's affiliated companies. Kerr-McGee resists application of the clause, arguing that a proper construction excludes the MICHAEL from the term "its vessels" and that the clause is invalid as opposed to public policy.

■ Although the agreement was made between Allied Container and Kerr-McGee, Kerr-McGee was aware the carriage was being performed by Allied Towing. Kerr-McGee returned the executed copy of the transportation agreement to Allied Towing, and it was billed by Allied Towing. Further, the district court found that Allied Towing was an affiliated company of Allied Container. Nevertheless, the court held that the barge was not exculpated by clause 13 because its owner was not a party to the agreement.

We believe clause 13 should not be given such a narrow construction. The clause specifically exculpates Allied Container and its vessels. It also clearly exculpates Allied Towing as an affiliated company. The record does not disclose that Kerr-McGee bargained for the use of any particular barge. It appears to have been content to load its cargo on any barge that Allied Towing tendered. Surely under these circumstances, it would be unduly technical and inconsistent to hold that while the parties agreed to exculpate a vessel actually owned by Allied Container, they intended not to exculpate a vessel furnished by an affiliated company under a demise charter. Nothing in the agreement or in the evidence suggests that the parties intended to make this fine distinction when they used the words, "its vessels," instead of the words, "their vessels," and no practical or economic justification for the distinction has been shown. We conclude, therefore, that clause 13 embraces the MICHAEL.

■ Nor does the clause contravene public policy. Although section 1 of the Harter Act, 46 U.S.C. § 190, forbids stipulations against negligence by carriers, the Act applies only to contracts of common carriage unless it is specifically incorporated into the agreement for private affreightment. E. g., Commercial Transport Corp. v. Martin Oil Service, Inc., 374 F.2d 813, 818 (7th Cir. 1967); Brown & Root, Inc. v. American Home Assurance Co., 353 F.2d 113, 118 (5th Cir. 1965), cert. denied, 384 U.S. 943, 86 S.Ct. 1465, 16 L.Ed.2d 541 (1966); Koppers Conn. Coke Co. v. James McWilliams Blue Line, Inc., 89 F.2d 865, 866 (2d Cir.), cert. denied, 302 U.S. 706, 58 S.Ct. 25, 82 L.Ed. 545 (1937). The district court found, and the parties do not suggest otherwise, that the cargo was shipped under a contract of private carriage. Section 1 of the Harter Act was not incorporated into the transportation agreement. Allied and Kerr-McGee, therefore, were free to make whatever contractual allocation of risk they desired. See The Monarch of Nassau, 155 F.2d 48 (5th Cir. 1946); The Elizabeth Edwards, 27 F.2d 747 (2d Cir. 1928). Kerr-McGee's reliance on Bisso v. Inland Waterways Corp., 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955), does not require a contrary result. Mr. Justice Black was careful to point out that the decision was based on the particular nature of the tug-tow relationship, and specifically stated that the considerations which invalidated exculpatory clauses in towage contracts did not necessarily command a similar result in other maritime contracts. 349 U.S. at 91, 93, 75 S.Ct. 629. Both before and after Bisso, it has been held that exculpatory clauses in private contracts of affreightment are not contrary to public policy. E. g., Texas Co. v. Lea River Lines, Inc., 206 F.2d 55 (3rd Cir. 1953); Allied Chem. Corp. v. Gulf Atlantic Towing Corp., 244 F. Supp. 2 (E.D.Va.1964).

The judgment of the district court is reversed.