**Loren W. WOLSIFFER, Plaintiff,**

v.

**ATLANTIS SUBMARINES, INC.; Atlantis Submarines Hawaii, Inc.; Atlantis Submarines Hawaii LP; Ecoscapes, Inc., In Personam; and M/V/Atlantis VII; M/V Voyager; and "Doe Vessels I–X", In Rem, Defendants.**

**Civ. No. 93–00624 BMK.**

United States District Court,
D. Hawaii.

March 3, 1994.

Jay L. Friedheim, Honolulu, HI, Joe P. Moss, Honolulu, HI, for plaintiff.

Robert E. Rau, Honolulu, HI, for defendant Atlantis.

Bert I. Ayabe, Hisaka Furusho Ayabe & Goto, Honolulu, HI, for defendant Ecoscapes.

***ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS ATLANTIS SUBMARINES, INC., ATLANTIS SUBMARINES HAWAII, INC., ATLANTIS SUBMARINES HAWAII LP, AND THE M/V ATLANTIS VII'S MOTION FOR SUMMARY JUDGMENT***

KURREN, United States Magistrate Judge.

Defendants Atlantis Submarines, Inc., Atlantis Submarines Hawaii, Inc., Atlantis Submarines Hawaii LP, and the M/V Atlantis VII (collectively "Atlantis") have moved this court for summary judgment. After reviewing the motion, the memoranda in support thereof and in opposition thereto, and hearing oral argument, the motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

This admiralty action arises from injuries sustained by Plaintiff Loren W. Wolsiffer in Kona, Hawaii. Plaintiff was employed by Atlantis, which provides ocean submarine

tours, as a deck hand, co-pilot, and crewman to work aboard the submarine M/V Atlantis VII. Because Atlantis's submarines are moored to buoys, Atlantis uses other boats to ferry the passengers, as well as food and other supplies, to and from its submarines.

Atlantis had entered into an oral agreement with defendant Ecoscapes, Inc. ("Ecoscapes") to charter Ecoscapes' vessel, the M/V Voyager ("Voyager"). Under this charter agreement, Ecoscapes assumed the responsibility to ferry tourists and crew members to and from the submarine on the day of the incident. The agreement also provided that an Atlantis employee would work on the Voyager to assist in the ferrying activities; Plaintiff was the chosen employee. As the Voyager returned to the pier at Kona, its captain, an employee of Ecoscapes, ordered Plaintiff to jump from the Voyager to the dock in order to secure the moorings. Plaintiff claims to have suffered injuries as a result of the jump.

Plaintiff filed suit against Atlantis and Ecoscapes alleging causes of action under the Jones Act and under the general maritime law for unseaworthiness and maintenance and cure. Cross-claims have been asserted between Atlantis and Ecoscapes. By this motion, Atlantis seeks summary judgment in its favor as to all claims raised against it.

## II. *STANDARD FOR SUMMARY JUDGMENT*

■ Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552.

If the party moving for summary judgment meets its initial burden at identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the non-moving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment. *T.W. Electrical Serv. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987) (citation omitted). Rule 56(e) requires the non-moving party to set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." FRCP Rule 56(e). " '[S]ignificant probative evidence tending to support the complaint' " must be produced. *T.W. Electrical Serv.*, 809 F.2d at 630 (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). Legal memoranda and oral argument, not being evidence, fail to create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).

■ The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

■ The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Moreover, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnotes omitted). Indeed, "if the factual context makes the non-moving party's claim *im-*

*plausible,* the party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Electrical Serv.,* 809 F.2d at 630–31.

## III. *ANALYSIS*

### A. *Unseaworthiness*

 The doctrine of seaworthiness under general maritime law is the absolute duty of a shipowner to furnish a vessel reasonably fit for its intended purpose. *Reinhart v. U.S.,* 457 F.2d 151, 152 (9th Cir.1972). This duty extends "not only to the shipowner's employees but to all who do seaman's work." *Baker v. Raymond International, Inc.,* 656 F.2d 173, 181 (5th Cir.1981) *cert. denied* 456 U.S. 983, 102 S.Ct. 2256, 72 L.Ed.2d 861 (1982). The remedy of unseaworthiness for an injured seaman applies *in rem* against the vessel and *in personam* against either the title owner of the vessel, *The Osceola,* 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760 (1903), or the owner *pro hac vice* under a demise charter. *Baker,* 656 F.2d at 182.

 It is undisputed that the incident occurred aboard the Voyager. Thus, liability for unseaworthiness depends upon the characterization of the Atlantis/Ecoscapes charter agreement; if considered a demise charter, Atlantis may be liable as the Voyager's owner *pro hac vice,* if considered a time charter, then the unseaworthiness claim may be asserted only against Ecoscapes as the vessel's title owner. Atlantis asserts that it entered into a time charter arrangement with Ecoscapes for use of the Voyager the day Plaintiff was injured, and thus the Voyager's captain and crew, including Plaintiff while serving on board the vessel, remained under the complete authority of Ecoscapes.

 When a vessel has been time chartered, it remains under the management and control of the vessel's owners. *The Nor-*

*land,* 101 F.2d 967, 971 (9th Cir.1939). A time charterer merely takes over the vessel's carrying capacity and reserves authority only as to certain business matters, such as ports touched and cargo loaded. *Saridis v. S.S. Paramarina,* 216 F.Supp. 794, 797 (E.D.Va. 1962). As a result, liability for employees' injuries rests upon the owner of the vessel. *Id.* Under a demise or bareboat charter, however, the charterer takes possession, custody, and control of the vessel and is considered its owner *pro hac vice.* The charterer, becoming the employer of the master and crew, is liable for injuries that occur during the charter period. Norris, *The Law of Seamen,* § 27:24, p. 252 (4th ed. 1985).

 In order for the agreement to be considered a demise charter, complete transfer of possession, command, and navigation of the vessel from the owner to the charterer is necessary. *Guzman v. Pichirilo,* 369 U.S. 698, 700, 82 S.Ct. 1095, 1096–97, 8 L.Ed.2d 205 (1962); *Gaspard v. Diamond M. Drilling Co.,* 593 F.2d 605, 606 (5th Cir.1979). "Anything short of ... a complete transfer is a time or voyage charter party or not a charter party at all." *Guzman,* 369 U.S. at 700, 82 S.Ct. at 1096. Courts are reluctant to find a demise charter when the dealings between the parties are consistent with any lesser relationship. *Id.; Gaspard,* 593 F.2d at 607 (In action for Jones Act negligence, unseaworthiness, and maintenance and cure, time charter is presumed and can only be overcome by specific facts that demise charter existed). Thus, a vessel owner who seeks to escape liability for unseaworthiness on the ground that a demise charter existed has the burden of establishing these facts. *Id.*

According to the affidavit of Michael Stanton, the General Manager for Atlantis Submarines, Hawaii, Inc. and Atlantis Submarines LP in Kailua–Kona, Ecoscapes provided the captain and crew (except for Plaintiff) of the Voyager and paid all operating expenses, while Atlantis agreed to pay a fee for use of the vessel. Further, Atlantis did not at any time exercise control or authority over the operation and navigation of the Voyager. Plaintiff neither disputes these facts nor advances facts or argument that would support the existence of a demise charter, and, there-

fore, fails to overcome the presumption of a time charter agreement. *See Gaspard,* 593 F.2d at 606 (Verbal agreement between drilling company and crew boat operator held to be time charter, and not demise charter, where crew boat operator retained possession and command of the vessel, supplied crew, and paid for insurance, operation, and repairs). Accordingly, summary judgment in favor of Atlantis is warranted on the unseaworthiness claim.

### B. *Jones Act Negligence*

An injured seaman may seek an additional remedy for negligence under the Jones Act (46 U.S.C. § 688) because the duty to exercise reasonable care is independent of a vessel owner's duty to provide a seaworthy ship. *Garrett v. Moore McCormack Co.,* 317 U.S. 239, 240 n. 2, 63 S.Ct. 246, 248 n. 2, 87 L.Ed. 239 (1942); *Reinhart,* 457 F.2d at 152. A Jones Act claim, however, can be only be brought against the seaman's employer. The plaintiff must establish, therefore, the existence of an employer-employee relationship at the time of the injury. *Cosmopolitan Shipping Co. v. McAllister,* 337 U.S. 783, 791, 69 S.Ct. 1317, 1321–22, 93 L.Ed. 1692, *rhg. denied* 338 U.S. 839, 70 S.Ct. 32, 94 L.Ed. 513 (1949); *Baker,* 656 F.2d at 177. Although a seaman may have more than one Jones Act employer for purposes of filing suit, only one employer will be liable on recovery. *Cosmopolitan Shipping,* 337 U.S. at 791, 69 S.Ct. at 1321–22; *Spinks v. Chevron Oil Co.,* 507 F.2d 216, 225 (5th Cir.1975); *Gazis v. John S. Latsis (USA) Inc.,* 729 F.Supp. 979, 982 (S.D.N.Y.1990). Atlantis submits that it cannot be considered Plaintiff's employer for recovery under the Jones Act for two reasons: First, Atlantis and Ecoscapes were under a time charter arrangement; second, Plaintiff was a "borrowed servant" of Ecoscapes when he was injured.

### 1. *Time Charter or Demise Charter?*

It is well established in Jones Act cases that the "employer" is the owner of the vessel, unless the vessel is held under a demise charter. *Stevens v. Seacoast Co.,* 414 F.2d 1032, 1037 (5th Cir.1969). As discussed in Part III, Section A above, the charterer

under a demise charter takes control of the vessel and becomes the "employer" of the master and crew. Under a time charter, however, the vessel owner remains the employer. Thus, the legal analysis under the Jones Act to determine a liable employer's identity where a charter arrangement exists is identical to that applied for the unseaworthiness claim.

Again, Plaintiff does not dispute that Ecoscapes retained the Voyager's master, paid its operating expenses, and remained in complete control and authority of the vessel. As discussed above, Plaintiff fails to present any significant evidence to the contrary. Based on the facts and the failure of Plaintiff to argue otherwise, Atlantis and Ecoscapes entered into a time charter rather than a demise charter and are, therefore, separate entities. The determinative question is 'under whose direction and control was Plaintiff at the time of the incident?'

### 2. *"Borrowed Servant" Doctrine*

The Jones Act recognizes the "borrowed servant" (or "loaned servant") doctrine, which states that a master can loan an employee to another for some special purpose. The person to whom the employee is loaned assumes the responsibilities of a master, thereby relieving the original master of liability for injuries that occur in the scope of the borrowed servant's employment. *U.S. v. Bissett–Berman Corp.,* 481 F.2d 764, 772 (9th Cir.1973); *McCollum v. Smith,* 339 F.2d 348, 351 (9th Cir.1964).

Atlantis contends that Plaintiff was a borrowed servant of Ecoscapes when he was injured. In deciding whether an employee is a borrowed servant, courts look at a variety of factors, the most determinative being who directs and controls the employee in the particular employment. *Hicks v. Ocean Drilling and Exploration Co.,* 512 F.2d 817, 822 (5th Cir.1975) *cert. denied* 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 639 (1976); *McCollum, supra.* Other factors include whether there was a written agreement by the employers regarding the loan of the employee, who paid the employee's wages and benefits, whether the employee assented

to the transfer, and the length of time of the employment. *Gaudet v. Exxon Corp.*, 562 F.2d 351, 355 (5th Cir.1977) *cert. denied* 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978).

Although Plaintiff asserts in paragraph 13 of his *verified* complaint that at all times he was "a seaman in the service of the defendants M/V ATLANTIS VII and M/V VOYAGER and was acting in the course and scope of his employment at the time of his injury," it is undisputed, and Plaintiff's counsel conceded at the hearing, that Plaintiff was under the authority and direction of the captain of the Voyager while aboard the Voyager. Correspondingly, Plaintiff asserts in paragraph 15 of his complaint that when he jumped from the Voyager to the pier, he did so at the command of the captain of the Voyager. Finally, Plaintiff asserts in paragraph 19 that Ecoscapes, as owner of the Voyager, "owed the duty to the plaintiff, *who was a borrowed servant*, to provide the plaintiff a safe place in which to work, a safe method of operation and a seaworthy vessel, including a safe vessel." (Emphasis added). Plaintiff's own assertions and pleadings establish that he was a borrowed servant under the direction and control of Ecoscapes.

Plaintiff argues, however, that he had been employed by Atlantis for four years until the incident and only Atlantis had paid his wages and benefits. In addition, Plaintiff asserts that Atlantis and Ecoscapes entered into an oral agreement of which Plaintiff was not aware. Although these are factors to consider, they are not controlling and do not outweigh Ecoscapes' complete direction and control of Plaintiff at the time he was injured, as well as plaintiff's own admissions in his verified complaint. *Guidry v. South Louisiana Contractors, Inc.*, 614 F.2d 447, 455 (5th Cir. 1980) ("A borrowing employer may become vicariously liable even without becoming an employer generally if the borrowing employer assumes control over the acts of the employee and is directing him at the time when liability arises.").

Plaintiff has not met his burden of showing there exists a genuine issue of material fact regarding Atlantis' liability under the Jones Act. The court therefore grants Atlantis'

motion for summary judgment in regard to that claim.

### C. *Maintenance and Cure*

 Maintenance and cure is the right of compensation given by general maritime law to the seaman who is ill or injured while in the service of a vessel. The shipowner's obligation is to pay the seaman's wages until the end of the voyage, as well as lodging and care thereafter, until the maximum cure attainable is reached. *Farrell v. U.S.*, 336 U.S. 511, 517–19, 69 S.Ct. 707, 710–11, 93 L.Ed. 850 (1949). A claim for maintenance and cure is much broader than claims under the Jones Act or unseaworthiness. *Farrell*, 336 U.S. at 516, 69 S.Ct. at 709–10; *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 729, 63 S.Ct. 930, 933, 87 L.Ed. 1107 (1943). Such claims are not dependent upon the negligence of the shipowner and are not restricted to injuries that occur only within the scope of a seaman's employment. *Farrell, supra; Aguilar v. Standard Oil Co.*, 318 U.S. 724, 732, 63 S.Ct. 930, 934–35, 87 L.Ed. 1107 (1943). Thus, findings regarding negligence or unseaworthiness do not necessarily encompass all of the issues relating to liability for maintenance and cure. Under the facts of this case, where Plaintiff was still "generally answerable to its [Atlantis'] call to duty," although under the immediate direction and control of Ecoscapes, there may be an issue concerning secondary liability of Atlantis for Plaintiff's maintenance and cure. *Cf. Farrell*, 336 U.S. at 516, 69 S.Ct. at 709–10.

 Plaintiff's complaint includes a claim for maintenance and cure as to both Atlantis and Ecoscapes. However, both Atlantis and Plaintiff failed to address the issue in their memoranda and oral arguments, even though Atlantis' motion for summary judgment was made as to all claims. Accordingly, because of the failure to adequately address the issue and the court's concerns of possible secondary liability, the motion for summary judgment as to maintenance and cure is DENIED.

### D. *Defendant Ecoscapes' Request for Further Discovery*

 Counsel for Defendant Ecoscapes requested at the hearing a continuance to

pursue further discovery. Rule 56(f) of the Federal Rules of Civil Procedure states that the court may refuse the application for judgment or order a continuance if it appears "from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to the party's opposition." Fed.R.Civ.P. Rule 56. The party moving for a Rule 56(f) continuance must specify for the court the expected information sought and its source.

References in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56(f). Rule 56(f) requires affidavits setting forth the particular facts expected from the movant's discovery. Failure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment.

*Brae Transp., Inc. v. Coopers & Lybrand,* 790 F.2d 1439, 1443 (9th Cir.1986).

Counsel opposing the motion for summary judgment has neither submitted affidavits nor specifically identified the discovery sought. The request for a continuance in order to pursue further discovery is, therefore, DENIED.

## IV. CONCLUSION

On a motion for summary judgment, if the moving party has set forth specific facts to establish that no genuine issue of material fact exists, the burden shifts to the non-moving party to present specific facts showing that there still exists a genuine issue for trial. Here, Plaintiff has failed to meet this burden as to the Jones Act negligence and the unseaworthiness claims. Atlantis' motion for summary judgment as to the Jones Act and unseaworthiness claims are, therefore, GRANTED.

As to the claim for maintenance and cure, an issue of secondary liability remains unaddressed by the parties. The summary judgment motion as to the maintenance and cure claim is, therefore, DENIED.

IT IS SO ORDERED.