John Michael ROSE, Plaintiff,

v.

CHAPLIN MARINE TRANSPORT,
INC. and Mon River Towing,
Inc., Defendants.

Civ. A. No. 2:93–0444.

United States District Court,
S.D. West Virginia,
Charleston Division.

July 26, 1995.

Carl E. Hostler, Hostler Law Offices, Charleston, WV, James J. Bedortha, Joel I. Persky and Joseph J. Cirilano, Goldberg, Persky, Jennings & White, P.C., Pittsburgh, PA, for plaintiff.

Mark D. Shepard, George H. Crompton and Paul D. Kruper, Buchanon Ingersoll, Pittsburgh, PA, for defendants.

*MEMORANDUM OPINION AND ORDER*

HADEN, Chief Judge.

Pending is the motion for summary judgment filed by Defendants Chaplin Marine Transport, Inc. ("Chaplin") and Mon River Towing, Inc. ("Mon River"). Plaintiff has responded and Defendants have replied. This issue is ripe for adjudication.

Plaintiff initiated this action on May 28, 1993. He filed an amended complaint on December 7, 1994. Plaintiff contends he was injured while working on the M/V Lillian G, a tow boat, on November 25, 1992. The Lillian G is owned by Mon River, but was being operated pursuant to a bareboat, or demise charter by Chaplin. In turn, Chaplin was operating the boat pursuant to a purported time charter between it and Mon River. Plaintiff contends he was following the common practice of his employer, Chaplin, when he was seriously burned as he attempted to incinerate garbage in a barrel located on the deck of the vessel. He asserts Mon River was aware of the presence and use of the barrel to burn garbage at the time of the incident. Plaintiff asserts causes of action based upon this Court's admiralty jurisdiction and the Jones Act, 46 U.S.C.App. § 688.[1]

## I.

■ Defendants contend they are entitled to summary judgment. The standard used to determine whether a motion for summary judgment should be granted or denied is stated by our Court of Appeals as follows:

"A moving party is entitled to summary judgment 'if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.' Fed R.Civ.Pro. 56(c). *See Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgement, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513–14. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A mere scintilla of evidence supporting the case is insufficient. *Id.*" *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 67, 130 L.Ed.2d 24, and *cert. denied,* —— U.S. ——, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994).

*Accord, McCoy v. United Postal Service,* 890 F.Supp. 529, 531 n. 3 (S.D.W.Va.1995) (Haden, C.J.); *Browning v. Snead,* 886 F.Supp. 547, 549–50 (S.D.W.Va.1995) (Haden, C.J.).

## II.

Mon River asserts it is not liable for any negligence occurring on or unseaworthiness of the Lillian G. It relies on the bareboat charter agreement between it and Chaplin. It claims the bareboat charter turns exclusive control, operation and navigation of the vessel over to Chaplin, thus relieving it of responsibility for Plaintiff's injuries. For the reasons that follow the Court agrees.

■ The owner of a vessel is normally liable for injuries caused by the vessel's un-

---

1. The jurisdiction of the federal courts over admiralty actions is clear. As stated by this Court in *Garner v. Dravo Basic Materials Co.,* 768 F.Supp. 192, 193 (S.D.W.Va.1991): " 'The judicial power shall extend . . . to all cases of admi-

ralty and maritime jurisdiction.' U.S. Constitution, Art. 3, Section 2. The Court must 'recognize the exclusive nature of federal admiralty law.' *Meaige v. Hartley Marine Corp.,* 925 F.2d 700, 702 (4th Cir.1991)."

seaworthiness. *McAleer v. Smith,* 57 F.3d 109, 111–12 (1st Cir.1995), *citing, Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 90, 66 S.Ct. 872, 875, 90 L.Ed. 1099 (1946) (*citing, The Osceola,* 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903)); *Moore v. Phillips Petroleum Co.,* 912 F.2d 789, 792 (5th Cir.1990) ("The vessel owner remains responsible for the seaworthiness of the vessel[.]").

 Nonetheless, an owner may turn the exclusive possession, control and navigation over to another party through a bareboat, or demise charter. A bareboat charter is

"created when 'the owner of the vessel ... completely and exclusively relinquish[es] possession, command, and navigation thereof to the demisee. [They are] therefore tantamount to, though just short of, an outright transfer of ownership. However, anything short of such a complete transfer is a time or voyage charter party or not a charter party at all.' " *McAleer v. Smith, supra,* 57 F.3d at 113, *citing, Guzman v. Pichirilo,* 369 U.S. 698, 699–700, 82 S.Ct. 1095, 1096, 8 L.Ed.2d 205 (1962) (internal quotation and citation omitted).

*See Wheatley v. Gladden,* 660 F.2d 1024, 1026 (4th Cir.1981) ("Under a bareboat charter the charterer assumes all the obligations of ownership, including those of the employer and crew. *United States v. W.M. Webb, Inc.,* [397 U.S. 179, 90 S.Ct. 850, 25 L.Ed.2d 207 (1970) ]. The test for establishing a bareboat charter is one of control—has the owner completely relinquished possession and command of the boat."); *Carolina Seafoods, Inc. v. United States,* 581 F.2d 1098, 1100 (4th Cir.1978). The charterer under a bareboat or demise charter thus stands in the shoes of the owner and becomes the owner *pro hac vice.* Because the bareboat charterer stands in the shoes of the owner, the bareboat charterer assumes the duties and responsibilities appurtenant to ownership, and the owner is relieved of the same. As stated recently in *Dow Chemical Co. v. Texaco Refining and Marketing, Inc.,* 887 F.Supp. 853, 863, (E.D.Va.1995):

"Under a bareboat or demise charter, full possession and control of the chartered vessel is turned over to the charterer.

*Reed v. S.S. Yaka,* 373 U.S. 410, 412, 83 S.Ct. 1349, 1351, 10 L.Ed.2d 448 (1963) ('It has long been recognized in the law of admiralty that for many, if not most purposes the bareboat charterer is to be treated as the owner, generally called the owner *pro hac vice.*'); Alex L. Parks & Edward V. Cattel, Jr., *The Law of Tug, Tow & Pilotage* 875 (3d ed.1994). The United States Court of Appeals for the Fourth Circuit has stated:

This rule recognizes that when the owner of the vessel enters into a demise charter, he surrenders all possession and control of the vessel to the charterer. Since he no longer has the right to control the use of the vessel, he is no longer charged with the duties and liabilities of its ownership. Conversely, the demise charterer 'becomes subject to the duties and responsibilities of ownership.'

*Kerr–McGee Corp. v. Law,* 479 F.2d 61, 63 (4th Cir.1973) (quoting *Leary v. United States,* 81 U.S. (14 Wall) 607, 610, 20 L.Ed. 756 (1872)). As a bareboat charterer, the charterer is held to be a bailee of the vessel. *Richmond Sand & Gravel Corp. v. Tidewater Constr. Corp.,* 170 F.2d 392, 393 (4th Cir.1948); 2b *Benedict on Admiralty* § 51, at 3–3 (1995)."

*See Forrester v. Ocean Marine Indem. Co.,* 11 F.3d 1213, 1215 (5th Cir.1993) ("In a demise charter, the vessel owner transfers full possession and control to the charterer, who in turn furnishes the crew and maintenance for the vessel (thus the term 'bareboat')."). And as stated in *Wolsiffer v. Atlantis Submarines, Inc.,* 848 F.Supp. 1489, 1494 (D.Haw.1994):

"In order for the agreement to be considered a demise charter, complete transfer of possession, command, and navigation of the vessel from the owner to the charterer is necessary. *Guzman v. Pichirilo,* 369 U.S. 698, 700, 82 S.Ct. 1095, 1096–97, 8 L.Ed.2d 205 (1962); *Gaspard v. Diamond M. Drilling Co.,* 593 F.2d 605, 606 (5th Cir.1979). 'Anything short of ... a complete transfer is a time or voyage charter party or not a charter party at all.' *Guzman,* 369 U.S. at 700, 82 S.Ct. at 1096. Courts are reluctant to find a demise char-

ter when the dealings between the parties are consistent with any lesser relationship."

The owner of a vessel impliedly warrants its seaworthiness[2] to the point of delivery to the bareboat charterer.[3] *Kerr–McGee Corp. v. Law*, 479 F.2d 61 (4th Cir. 1973); *Dow Chemical Co. v. Texaco Refining and Marketing, Inc.*, 887 F.Supp. at 864, citing, *Dempsey v. Downing*, 11 F.2d 15, 17 (4th Cir.1926); *In the Matter of D & H Corp.*, 1994 WL 574143, *1 (E.D.Va.1993); *Cos v. French–Polish Shipping Co.*, 1986 WL 13361, *1 (D.Md.1986); *Interocean Shipping Co. v. M/V Lygaria*, 512 F.Supp. 960 (D.Md. 1981). If the vessel was unseaworthy when delivered, the owner is liable for injuries caused by such unseaworthiness notwithstanding the existence of the bareboat charter. If the vessel is seaworthy upon delivery, the bareboat charterer then assumes the responsibilities of the owner for liability for injuries thereafter caused by the unseaworthiness of the vessel. *McAleer v. Smith, supra*, 57 F.3d at 112 ("In general, if there is an owner *pro hac vice*, the title owner will be absolved of personal liability (except for defective conditions that existed before the owner *pro hac vice* took control of the vessel)."); *Forrester v. Ocean Marine Indem. Co.*, 11 F.3d at 1215 ("The demise charterer is ... responsible *in personam* for the negligence of the crew and the unseaworthiness of the vessel."); *Wolsiffer v. Atlantis Submarines, Inc.*, 848 F.Supp. at 1494 ("The remedy of unseaworthiness for an injured seaman applies *in rem* against the vessel and *in personam* against either the title owner of

the vessel ..., or the owner *pro hac vice* under a demise charter." (citation omitted).).

Plaintiff acknowledges the existence of the bareboat charter agreement and does not dispute the bareboat agreement has the effect of giving Chaplin the status of owner *pro hac vice*. Plaintiff argues Mon River is liable for the alleged unseaworthiness of the vessel, however, by virtue of the "charter party" agreement executed between Chaplin and Mon River the same day the bareboat charter agreement was executed. Plaintiff argues that pursuant to the charter party agreement, Mon River controlled Chaplin and the vessel, and is thus liable for its alleged unseaworthiness. Defendants, on the other hand, contend the agreement was a "time charter" agreement that left control and possession of the vessel solely in the hands of Chaplin, the *pro hac vice* owner under the bareboat agreement.

The second agreement entered into by the parties is entitled "Charter Party." In the first paragraph of the agreement, the contract purports to be a "Time Charter."[4] Plaintiff acknowledges the time charter did not place any responsibility upon Mon River to furnish the crew or man the vessel. Instead, he relies only on paragraph six of the agreement, which states:

"6. REPORTS: Chaplin shall require that the master of the towboat report daily by radio the position of the tow and any other information that it is requested by [Mon River] regarding the status of the barges that it has or has had in tow. Chaplin shall require that the master of

**2.** "The doctrine of seaworthiness under general maritime law is the absolute duty of a shipowner to furnish a vessel reasonably fit for its intended purpose. *Reinhart v. U.S.*, 457 F.2d 151, 152 (9th Cir.1972). This duty extends 'not only to the shipowner's employees but to all who do a seaman's work.' *Baker v. Raymond International, Inc.*, 656 F.2d 173, 181 (5th Cir.1981), *cert. denied*, 456 U.S. 983, 102 S.Ct. 2256, 72 L.Ed.2d 861 (1982)." *Wolsiffer v. Atlantis Submarines, Inc.*, 848 F.Supp. 1489, 1494 (D.Haw.1994).

**3.** As stated in *Banegas v. United Brands Co.*, 663 F.Supp. 198, 200 (D.S.C.1986):

"[T]he warranty of seaworthiness, which would form the basis of any claim of unseaworthiness which the plaintiff might have, is a

warranty which runs from the shipowner or the owner *pro hac vice* of the vessel to the plaintiff."
*Citing, Bowen v. Union Concrete Pipe Co.*, 299 F.Supp. 1109 (S.D.W.Va.1969).

**4.** The first paragraph of the Charter Party agreement states:

"This Time Charter, made between Mon River Towing, Inc., a Pennsylvania corporation with its principal place of business at 200 Speers Road, Belle Vernon, Pennsylvania (hereinafter called MRT) and Chaplin Marine Transportation, a Kentucky corporation with an address P.O. Box 98, Catlettsburg, Kentucky, 41129 (hereinafter called Chaplin)." Plaintiff's Response, Exhibit A.

the towboat report weekly by radio the engine hours of the two main engines and the two generator engines on the boat. Chaplin shall furnish to Mon River copies of all purchases of fuel oil, lubricating oil and hydraulic oil which are purchased for consumption aboard the towboat M/V Lillian G. Mon River Towing will pay said vendors of such oils directly."

Plaintiff suggests the foregoing, combined with his contention that the vessel frequently refueled and underwent engine maintenance at a location operated by Mon River, is enough to create a genuine issue of material fact regarding the control of the vessel for liability purposes. The Court disagrees.

 In contrast to a bareboat charter, a time charter does not vest operational control in the time charterer. Instead, the time charterer directs the destinations of the vessel without assuming any responsibility for the actual operation of the ship. Therefore, the time charterer is not held liable for the negligence of the crew or the unseaworthiness of the vessel. As stated by the Court of Appeals for the Fifth Circuit:

"A time charter only entitles the charterer to the use of the vessel for a specified time. The vessel owner retains primary possession and control. Although a time charterer does direct the destinations of the vessel, he does not control the details of vessel operation required to reach those destinations. As a non-demise charterer, *the time charterer is thus not liable for claims of negligence of the crew or for the unseaworthiness of the vessel.* But the time charterer may be liable in that capacity for his own negligence." (footnotes omitted and emphasis added). *Forrester v. Ocean Marine Indem. Co.*, 11 F.3d at 1215.

In *Moore v. Phillips Petroleum Co.*, 912 F.2d at 791–92, the Court distinguished the re-

sponsibilities of time charterers from those of owners as follows:

"Under the traditional time-charter agreement, the time charterer directs the vessel's commercial activities. It may designate the cargo to be carried and determine the vessel's routes and destinations. * * * The time charterer's duties are different from the vessel owner's duties. The vessel owner remains responsible for the seaworthiness of the vessel, *e.g., Nichimen Co. v. M.V. Farland*, 462 F.2d 319, 331 (2nd Cir. 1972), dangerous conditions on board, *e.g., Migut v. Hyman–Michaels Co.*, 571 F.2d 352, 356 (6th Cir.1978), navigational errors by the pilot and negligence by the crew, *e.g., Delta Transload, Inc. v. MV Navios Commander*, 818 F.2d 445, 451 (5th Cir. 1987), and a reasonably safe means of access for those boarding or leaving the vessel, *see, e.g., Tittle v. Aldacosta*, 544 F.2d 752, 755 (5th Cir.1977) [.]"

*See Wolsiffer v. Atlantis Submarines, Inc.*, 848 F.Supp. at 1494; *Roby v. Hyundai Merchant Marine*, 700 F.Supp. 316, 320–21 (E.D.La.1988); *Vlachos v. M/V Proso*, 637 F.Supp. 1354, 1364 n. 14 (D.Md.1986).

 As noted above, the Plaintiff acknowledges the delegation of responsibilities pursuant to the bareboat charter. Under said agreement, Mon River transferred possession, control and command of the Lillian G to Chaplin. Chaplin thus became the *pro hac vice* owner of the vessel, legally responsible for the unseaworthiness of the vessel after the date of transfer. Chaplin, in turn, executed a purported time charter agreement with Mon River.[5] Although Plaintiff argues the time charter had the effect of a demise charter transferring control over the vessel back to Mon River, the Court disagrees.

---

**5.** In fact, paragraph 5 of the agreement states, in pertinent part:

"5. RATE AND PAYMENTS: MRT shall pay Chaplin the sum of $1,356.00 per day for each operating day. It is intended that Chaplin shall be responsible for furnishing said towboat with a minimum complement of a six person (6) crew, consisting of a captain, a pilot, two (2) lead men deckhands and two (2) deckhands. Chaplin shall be responsible for making wage payments and shall at all times maintain compliance with all Federal and State Wage and Hour Laws. In addition, Chaplin shall be responsible for the following: "Purchasing of boat stores, supplies, group hospitalization, electrical subcontracting, transportation of crew to and from the vessel, maintenance of the vessel and vessel machinery and equipment, payment of insurance policies and insurance deductibles[.]" Plaintiff's Memorandum at Exhibit A.

In essence, it appears Plaintiff is arguing Chaplin, after becoming the bareboat charterer and *pro hac vice* owner, executed a bareboat charter *back* to Mon River, making Mon River both paper owner and *pro hac vice* owner of the vessel. The Court notes the following: first, Plaintiff does not dispute Chaplin was a bareboat charterer under the first agreement, and therefore *pro hac vice* owner of the vessel; second, in regard to the second agreement between Chaplin and Mon River a time charter, rather than a bareboat charter, is presumed to exist as a matter of law and such presumption may be overcome only by specific facts showing a demise charter existed, *Wolsiffer, supra*, 848 F.Supp. at 1494, *citing Gaspard v. Diamond M. Drilling Co.*, 593 F.2d 605, 607 (5th Cir.1979); third, the charter is an unrebutted time charter.

Plaintiff has been unable to present specific facts showing a demise charter was executed between Chaplin and Mon River after Mon River demised the vessel to Chaplin. The Court thus concludes the time charter is precisely what it purports to be. Therefore, because Chaplin, the *pro hac vice* owner of the boat, was responsible for the seaworthiness of the vessel on the date of the Plaintiff's injury, the Court **GRANTS** Mon River's motion for summary judgment on the unseaworthiness claim against it.

### III.

Chaplin contends it is entitled to summary judgment because Plaintiff failed to produce evidence the vessel was unseaworthy or that Chaplin was negligent. Plaintiff has attached several portions of depositions he asserts create a question of material fact regarding the seaworthiness of the Lillian G at the time of the incident and of Chaplin's negligence.

Claims of negligence under the Jones Act or of unseaworthiness subject the plaintiff to a light burden of proof. As stated by the Court of Appeals in *Estate of Larkins v. Farrell Lines, Inc.*, 806 F.2d 510, 512 (4th Cir.1986), *cert. denied*, 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987):

"Under the Jones Act, the standard of recovery has not been a strict one, and

seamen have been afforded the 'judicially developed doctrine of liability granted to railroad workers by the FELA,' *Kernan v. American Dredging Co.*, 355 U.S. 426, 439, 78 S.Ct. 394, 401, 2 L.Ed.2d 382 (1958), including its light burden of proof on negligence and causation. While the standard of causation for unseaworthiness is 'more demanding,' *Chisholm v. Sabine Towing and Transportation Co.*, 679 F.2d 60, 62 (5th Cir.1982), the plaintiff's burden in either case has been characterized as light. *Vallot v. Central Gulf Lines*, 641 F.2d 347, 350 (5th Cir.1981). The jury's role, moreover, has been an important one in such cases, and doubts have been resolved in favor of submission."

### A.

A comprehensive but concise overview of an owner's responsibility for a vessel's seaworthiness was provided in *Drachenberg v. Canal Barge Co., Inc.*, 571 F.2d 912, 918 (5th Cir.1978):

"The owner of the vessel has a duty to provide a vessel that is reasonably fit for its intended use. This duty to provide a seaworthy vessel requires that the vessel, its gear, appurtenances, and operation must be reasonably safe. *Seas Shipping Co. v. Sieracki*, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, 1946 A.M.C. 698. 'That (a vessel) owner is liable to indemnify a seaman for an injury caused by the unseaworthiness of the vessel or its appurtenant appliances and equipment has been settled law in this country ever since *The Osceola*, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; *Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 99, 64 S.Ct. 455, [457] 88 L.Ed. 561, 564, [ (1944) ] and authorities cited.' *Id.* at 90, 66 S.Ct. 872, at 875, 90 L.Ed. at 1103.

"In *Gutierrez v. Waterman Steamship Corp.*, 1963, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297, 1963 A.M.C. 1649, the Supreme Court concluded that 'things about a ship, whether the hull, the decks, the machinery, the tools furnished, the stowage, or the cargo containers, must be reasonably fit for the purpose for which they are to be used.' *Id.* at 213, 83 S.Ct. at

1190, 10 L.Ed.2d at 303. More recently, in *Usner v. Luckenbach,* 1971, 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562, 1971 A.M.C. 277, the Supreme Court said that: 'A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances might be in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo, or the manner of its stowage, might be improper. For any of these reasons, or others, a vessel might not be reasonably fit for her intended service.' *Id.* at 499, 91 S.Ct. at 517–18, 27 L.Ed.2d at 562."

■ It is clear that the owner's duty to provide a seaworthy vessel is an absolute one; the owner need not have knowledge of unseaworthy condition for liability to attach. *Furka v. Great Lakes Dredge & Dock Co., Inc.,* 755 F.2d 1085, 1088 n. 3 (4th Cir.1984), *cert. denied,* 474 U.S. 846, 106 S.Ct. 136, 88 L.Ed.2d 112 (1985). *Accord, Estate of Larkins v. Farrell Lines, Inc.,* 806 F.2d at 514 ("[I]n the ordinary case, where the alleged unseaworthy condition concerns faulty gear or appurtenances, the shipowner cannot raise lack of notice as a defense."). A certain condition aboard a vessel may be unseaworthy even if transitory. *Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 498, 91 S.Ct. 514, 517, 27 L.Ed.2d 562 (1971), *citing Mitchell v. Trawler Racer,* 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960) and *Crumady v. The Joachim Hendrik Fisser,* 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959).

■ Plaintiff has presented evidence that the burning of garbage in a barrel was a common practice aboard the Lillian G. He has presented evidence that it was not uncommon for ship hands to ignite the fire in the barrel with an accelerant, either diesel fuel or gasoline. The Court concludes that such evidence creates a question of material fact involving the fitness and, thus, seaworthiness of the vessel. As such, summary judgment is **DENIED** on the unseaworthiness claim against Chaplin.

**B.**

■ As to the Plaintiff's negligence claim as a seaman under the Jones Act, the required standard of proof is identical to the standard of proof necessary to prove negligence under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* ("FELA"), as applied to railroad workers. As stated by the Court of Appeals in *Hopson v. Texaco, Inc.,* 351 F.2d 415, 417 (4th Cir.1965), *rev'd on other grounds,* 383 U.S. 262, 86 S.Ct. 765, 15 L.Ed.2d 740 (1966):

"Under general maritime law a seaman could only recover against a ship or its owner for personal injuries suffered in line of service when there had been a breach of duty to provide a seaworthy ship or to provide him with maintenance and cure. The Jones Act ... gave to seaman or their personal representatives a cause of action against their employer based on negligence. *Cortes v. Baltimore Insular Line, Inc.,* 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932). By reference, the Jones Act incorporated the standards of the Federal Employees Liability Act, 45 U.S.C. 51–60, for determining the employer's liability. Under section 1 of the FELA, 45 U.S.C. 51, a railroad is liable to its employees for injuries or death resulting in whole or in part from the negligence of any officers, agents, or employees of such railroad."

■ Under the FELA, the standard of proof required to prove negligence is minimal. A plaintiff need prove only that the employer's negligence played some part, even if slight, in producing the plaintiff's injury. *Brown v. Baltimore and Ohio R. Co.,* 805 F.2d 1133, 1137 (4th Cir.1986) ("In a FELA action, 'the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.' *Rogers v. Missouri Pacific Railroad Co.,* 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957).").[6] *See Kernan v.*

---

**6.** Although the FELA has been likened to a workers' compensation statute, the standard of proof nonetheless includes a nexus to some employer

negligence. *Jordan v. Southern Ry. Co.,* 970 F.2d 1350, 1352 (4th Cir.1992) (FELA is not a no-fault worker's compensation statute; the injured

*American Dredging Co.*, 355 U.S. 426, 438–39, 78 S.Ct. 394, 401, 2 L.Ed.2d 382 (1958) ("[T]he theory of the FELA is that where the employer's conduct falls short of the high standard required of him by this Act, and his fault, in whole or in part, causes injury, liability ensues.").

 Our Court of Appeals has delineated the criteria for proving negligence in a FELA claim as follows:

"The Supreme Court has observed that the FELA does not define negligence and therefore leaves the question to be determined by common law principles as established and applied by the federal courts. *Urie v. Thompson*, 337 U.S. 163, 174, 69 S.Ct. 1018, 1026, 93 L.Ed. 1282 (1949).

"In order to show [an employer's] liability under the FELA, [an employee] must prove that he was injured while in the scope of his employment, his employment was in furtherance of [his employer's] business, [the employer] was negligent, and [the employer's negligence caused, at least in part, the injury for which compensation is sought. *Sowards v. Chesapeake & O. Ry.*, 580 F.2d 713, 714 (4th Cir.1978) (citing 45 U.S.C. § 51)." *Brown v. CSX Transp., Inc.*, 18 F.3d 245, 249 (4th Cir. 1994).

 In the instant action the Court concludes the Plaintiff has produced evidence sufficient to meet the minimal standard created by the Jones Act through the FELA. Whether Chaplin or its officers or agents were negligent and whether such negligence caused, in some slight respect, Plaintiff's injuries, are questions of material fact for submission to a jury. Therefore, Chaplin's motion for summary judgment on the negligence claim is **DENIED.**

### IV.

Based upon the foregoing, the Court **GRANTS** Mon River's motion for summary judgment and **DENIES** Chaplin's motion for summary judgment.

worker must prove some act of negligence on the part of the employer.").